UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EDWARD G. PENA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-CV-418-GSL |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Edward G. Pena's ("Pena") appeal of the Social Security Administration's Decision dated January 26, 2023 (the "Decision") which found that Pena was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

**ANALYSIS**

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B.  Procedural Background**

Pena filed an application for benefits on May 11, 2021, alleging disability beginning on April 21, 2021. The claim was denied initially and on reconsideration. On January 13, 2023, the parties participated in an online video hearing before an ALJ. The ALJ issued an unfavorable decision on January 26, 2023. (R. 17-32). This appeal followed.

### C. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Pena did not engage in substantial gainful activity since April 21, 2021, the alleged onset date. At step two, the ALJ determined that Pena had the following severe impairments: coronary artery disease status post 4 vessel coronary artery bypass

graft, obesity, degenerative disc disease of the lumbar spine, right trochanteric bursitis, and obstructive sleep apnea. (R. 19). The ALJ further found that Pena had the non-severe impairments of anxiety, depression, hypertension, hyperlipidemia, degenerative joint disease of the shoulder, and chronic left upper extremity deep vein thrombosis. (R. 20).

At step three, the ALJ found that Pena did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (R. 22). At step four, the ALJ found that Pena had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around unprotected heights or unprotected dangerous moving machinery.

(R. 23).

Also at step four, the ALJ found that Pena is able to perform past relevant work. (R. 30). Thus, the ALJ ruled that Pena was not disabled, as defined in the Social Security Act. (R. 32).

1. The ALJ's Assessment of Pena's RFC

Pena contends that the ALJ merely summarized the evidence and failed to cite any specific evidence to support the RFC. This issue raises the question of just how much does an ALJ have to articulate her reasoning? Pena asserts that an ALJ must tie specific evidence to the RFC such that, for instance, a specific medical record supports the finding that he can stand or walk for six hours a day. The Commissioner, in contrast, argues that an ALJ need only meet the minimal requirements of the substantial evidence standard of review. The Seventh Circuit's recent decision in *Warnell v. O'Malley*, 97 F.4th 1050 (7th Cir. 2024), is instructive. The Court held: "Time and time again, we have emphasized that Social Security adjudicators are subject to only the most minimal of

articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id*. at 1053-54.

In the present case, the ALJ extensively discussed the medical record and hearing testimony, (R. 23-29), wherein the ALJ stated:

> A review of the claimant's course and pattern of care shows that while he occasionally reported pain and other symptoms, he showed improvement in symptoms with treatment. Examinations and clinical findings were also essentially unremarkable. In addition, the claimant's characterization of his pain and other symptoms, and the extent to which they limited him is generally inconsistent with the medical evidence contained in the record. Furthermore, throughout the period that the claimant alleged disability, he was able to engage in some activities of daily living. While no one factor cited above is dispositive, and each perhaps on its own does not establish anything conclusively, the totality of the facts and circumstances cited above made it difficult to rely heavily on the claimant's subjective complaints. Consequently, the undersigned relied greatly on the available objective medical evidence of record and the persuasive medical opinion statements.

(R. 25).

After further discussing the evidence the ALJ stated:

> As discussed above, the medical evidence fails to reveal any significant findings to indicate any greater limitations than those provided in the residual functional capacity. The claimant has improved since his acute cardiac event, and he even reported that he can walk for miles and climb more than two flights of stairs (Exhibits 4F/41; 9F/10, 15, & 19; 10F/27, 32, & 51; 14F/5; & 15F/4). While he has at times reported some fatigue and shortness of breath, that is also improving. No complaints of fatigue were noted when he was seen in urgent care for symptoms diagnosed as shingles and contact dermatitis in February 2022, and he was even noted as reporting he had cleaned a grill recently. (Exhibit 19F/3) And when seen October 3, 2022, by FNP Jefferies to discuss sleep apnea, there was no mention of significant fatigue, and in fact stated that Trazadone kept him asleep and he did not have frequent wakening. (Exhibit 18F/2)

> The residual functional capacity incorporates the claimant's alleged limitations that are reasonably supported by the evidence. The claimant's complaints of back and hip pain and other physical symptoms were considered in reducing him to light work with additional postural limitations, as he appeared capable of performing modified light work within 12 months of the alleged onset date. These symptoms were further considered in finding that he can never work around unprotected heights or unprotected dangerous moving machinery.

(R. 29).

A review of the Decision and the evidence shows that the ALJ met, and even exceeded, the minimal articulation requirements. Thus, remand is not warranted on this issue.

### 2. Analysis of Pena's Left Arm Impairment

In the Decision, the ALJ noted that Pena had suffered DVT in his left arm after his heart surgery. The ALJ found the condition non-severe, as Pena's cardiologist opined in June of 2021 that it did not impose any significant functional limitations. (R. 20). Pena argues that the ALJ ignored evidence post-dating the June 2021 opinion which show that Pena, in July of 2021, complained of left arm swelling and tingling in his left arm, and, and fingers. (R. 881-84, 1068-69). Also, in October of 2021 a vascular specialist noted that Pena had chronic nonocclusive subclavian thrombus that was stable and unchanged, with no treatment being recommended. (Tr. 1142). However, the ALJ thoroughly discussed Pena's left arm DVT, noting that Pena did not wear his compression sleeve consistently (R. 25, citing R. 883), and an ultrasound of his arm showed no acute thrombus (R. 25, citing R. 1142). Pena was told he could stop is anti-coagulant therapy and that no follow-up was needed. (*Id.*). Moreover, in October 2021, Pena had full sensation in both arms, with no gross abnormalities, no tenderness, and full range of motion of his shoulders, arms and wrists. (R. 27, citing R. 1255-56). This Court finds that substantial evidence supports the ALJ's finding that Pena's left arm DVT was not a severe impairment. In any event, the ALJ gave

Pena the benefit of the doubt and limited him to lifting at the light level and restricting use of his arms by eliminating climbing ladders, ropes, or scaffolds and only occasional crawling. (R. 21). A review of the record does not compel greater limitations than those found by the ALJ. Thus, there is no basis for remand on this issue. *DeLong v. Saul*, 844 F. App'x 894 (7th Cir. 2021).

### 3. Analysis of Pena's Cardiac and Musculoskeletal Impairments

Pena argues that he cannot perform light work because he has a limited ability to walk due to his April 2021 heart attack and heart surgery, and also suffers from back, hip, knee, and foot pain. The ALJ fully discussed Pena's heart surgery, and noted that Pena completed cardiac rehabilitation in August 2021, which improved his functioning. (R. 25, citing R. 1176-1245). By July of 2021, Pena could walk normally, move his arms and legs normally, and had no focal deficits. (R. 25, citing R. 884). Additionally, the ALJ noted that there was no evidence of ongoing, regular complaints of chest pain and his occasional reports of chest pain were likely musculoskeletal rather than cardiovascular in nature. (R. 26, citing R. 1097).

Likewise, the ALJ discussed Pena's history of back pain, and noted that he was able to work full-time (at a medium exertional level) even with the back pain. (R. 26). The ALJ noted that Pena treated his back pain with sacroiliac joint injections and medications such as Norco and Mobic (R. 26, citing R. 1251, 1310, 1317), but that he never followed through with prescribed physical therapy. (R. 26, citing R. 1251).

Additionally, with respect to his hip pain, the ALJ discussed the May 2022 MRI of Pena's right hip, which revealed no acute abnormalities or degenerative changes. (R. 27, citing R. 1280, 1335-36, 1340, 1366). The ALJ also discussed Pena's left foot pain, noting that no imaging supported the diagnosis of osteoarthritis. (R. 27, citing R. 1297). Pena received an injection in his

left foot which he reported helped a little. (R. 27, citing R. 1301). Pena was prescribed four weeks (8 sessions) of physical therapy, but after attending five sessions he was discharged for not showing up to his appointments. (*Id*.). Pena argues that the ALJ failed to discuss some of the medical records supporting back, hip, knee or foot pain. However, these records do not consist of a "line of evidence" favorable to Pena that the ALJ ignored. (*See* R. 27, where the ALJ discussed the allegedly ignored records). In any event, Pena has failed to explain how any of the records compel greater limitations than those found by the ALJ. Moreover, the ALJ is not required to cite every treatment record in her Decision. *Warnell*, 97 F.4th at 1053-54. This Court's review of the evidence and the Decision leads to the conclusion that the ALJ thoroughly evaluated the record and reasonably found that Pena had not proven that he could not perform a range of light work. Thus, there is no basis for remand on these issues.

### 4. Analysis of Pena's Obesity

Pena contends that, in combination with his other impairments, the ALJ should have found that his obesity prevented him from performing light work. However, the Decision shows that the ALJ discussed the evidence related to Pena's obesity and his musculoskeletal pain and found that Pena did not require additional standing or walking limitations due to his self-reported ability to "walk for miles", his refusal to attend prescribed physical therapy, and his acknowledgement that injections improved his pain. (R. 27-29). In addition to the ALJ's assessment of the evidence, she relied on the opinions of state agency physicians who considered Pena's obesity and concluded that Pena could stand or walk for six hours in a workday. (R. 97, 100, 105, 107).

Pena claims that the ALJ's reliance on the state agency physician's opinions that Pena could perform a range of light work was error, and that the ALJ should have found that the state agency

opinions were outdated due to new exam findings that Pena contends supports his claim that he cannot walk or stand for more than ten minutes. However, none of the new exam findings contain an opinion that Pena had any functional limitations. In contrast, the state agency doctors, Dr. Eskonen and Dr. Sands, opined that Pena could stand or walk for six hours a day. It was reasonable for the ALJ to rely on these opinions because they were well supported, consistent with other evidence of record, and no other medical source opined to any functional limitations. *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019); *Rice v. Barnhart*, 384 F.3d363, 370-71 (7th Cir. 2004) (no error where no doctor indicated greater limitations). It is noteworthy that Drs. Eskonen and Sands considered the evidence of Pena's obesity, cardiac condition, DVT, and imaging of his spine, but still found that he could perform light work. As the Commissioner points out, for the ALJ's reliance on the only available medical opinions of record to support reversal, Pena must show that "no reasonable mind could accept the ALJ's" reliance on those opinions. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). That showing has not been made here. As the ALJ's discussion of Pena's treatment records support her conclusion that evidence post-dating the state agency physicians' review did not support Pena's claim of inability to perform light work, there is no basis for remand on this issue.

### 5. Subjective Symptom Analysis

Pena claims that the ALJ's subjective symptom analysis was patently wrong due to alleged mischaracterizations of the evidence and selective consideration of daily activities. Pena claims that the ALJ ignored exams that referenced pain in his lumbar spine, knees, left foot, and SI joint, and antalgic/limping gait. Notably, however, the Social Security Act states that '[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42

U.S.C. § 423(d)(5)(A). Moreover, pursuant to the regulations, relevant factors in assessing symptom credibility include inconsistencies between a claimant's reports and the objective medical evidence, the treatment a claimant receives, activities of daily living, and any other factors concerning a claimant's functional limitations. 20 C.F.R. § 404.1529(c)(2), (c)(3)(1)-(vii). An ALJ is only required to explain the weight given to a claimant's statements in a manner sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. SSR 16-3p. A subjective symptom evaluation is "patently wrong" if it lacks *any* explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (emphasis added).

With respect to Pena's daily activities, it is clear that the regulations specify that activities of daily living are one factor that ALJs may consider. 20 C.F.R. § 404.1529(c)(3)(i). Here, the ALJ only briefly referenced Pena's daily activities in the step two analysis, noting that there was no documentation of any mental health condition hindering Pena from performing activities of daily living (R. 22), and in the step three analysis where it was briefly noted that Pena was able to engage in activities of daily living during the period he alleged disability. (R. 23, 25, 30). As it was clear that the ALJ did not put undue emphasis on Pena's daily activities, and that consideration of daily activities is permissible under the regulations, the Court finds no error here.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on June 10, 2024.

/s/ Gretchen S, Lund
GRETCHEN S. LUND, JUDGE
UNITED STATES DISTRICT COURT